<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **J.M.**,<br><br>Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY**,<br><br>Defendant. | Civil Action No. 24-8438 (ZNQ)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

   **THIS MATTER** comes before the Court upon J.M.'s[1] ("Plaintiff") appeal of the Social Security Administration's ("Defendant") June 18, 2024 denial of Plaintiff's request for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* ("Compl.," ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. §§ 405(g) and 1383(c) and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[2]

   After reviewing the parties' submissions and the Administrative Record ("AR," ECF No. 6), the Court finds that the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and properly within the ALJ's decision-making authority. Accordingly, the decision to deny Plaintiff DIB will be **AFFIRMED**.

---

[1] The Court refers to Plaintiff by his initials given the privacy concerns that arise from social security cases.
[2] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

A. **Procedural History**

On November 19, 2021, Plaintiff filed his initial claim for DIB, citing spinal stenosis, depression, arthritis in hips and knees, and lower back issues, beginning on January 1, 2003. (AR at 109–10.)  Plaintiff later amended his alleged onset date to November 17, 2021.  (*Id.* at 46–47.)

The application was denied initially (*id.* at 134–38), and thereafter on reconsideration (*id.* at 147–49).  Plaintiff then requested a hearing before an ALJ to review the application de novo. (*Id.* at 150.)  On June 12, 2023, an ALJ held a hearing and subsequently denied Plaintiff's DIB, concluding that he "has not been under a disability within the meaning of the Social Security Act since November 17, 2021."  (*Id.* at 10.)  Plaintiff subsequently sought review by the Appeals Council.  (*Id.* at 1–6.) The Appeals Council denied Plaintiff's request for review on June 18, 2024, rendering the ALJ's September 11, 2023 decision the Commissioner's final decision.  (*Id.* at 1.)

Plaintiff filed the instant action, alleging in the Complaint that he is disabled and that the ALJ's findings and conclusions are "clearly erroneous in law and fact."  (Compl. ¶ 9.)  In support of his complaint, Plaintiff filed an Appeal Brief ("Appeal Br.," ECF No. 11), which Defendant opposed ("Opp.," ECF No. 15).

B. **Background: ALJ Decision**

In denying Plaintiff's DIB application, the ALJ stated that it must follow a five-step sequential evaluation process for determining whether an individual is disabled.  (AR at 11.)  In following that process, the ALJ made several findings.

At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since November 17, 2021."  (*Id.* at 12.)  At step two, the ALJ found that Plaintiff had several severe impairments, including "morbid obesity, osteoarthritis of the left knee, tendinitis of the left rotator

cuff, coronary artery disease, diabetic neuropathy, carpal tunnel syndrome and depressive disorder." (*Id.*)  The ALJ also discussed other conditions but concluded that they were non-severe and failed to pose any significant functional limitation.  (*Id.* at 13.)

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 13.)  In reaching that conclusion, the ALJ considered listings 1.18, 4.04, and 12.04, and stated that "[n]o treating or examining physician has proffered findings that are equivalent in severity to the criteria of these or any other listed impairments." (*Id.*)

At step four, the ALJ reviewed Plaintiff's medical history and other evidence in the record, ultimately finding that Plaintiff "has the residual functional capacity to perform sedentary work" with certain limitations.  (*Id.* at 14.)  At step five, the ALJ evaluated Plaintiff's age, education, work experience, and residual functional capacity, and determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at19.)  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  (*Id.* at 20.)

## II.    SUBJECT MATTER JURISDICTION

This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g), which authorizes judicial review of final decisions of the Commissioner of Social Security.

## III.    LEGAL STANDARD

### A.    Standard Of Review

On appeal, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g);

*Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). In reviewing applications for social security disability benefits, the district court has the authority to conduct a plenary review of legal issues decided by the ALJ. *See Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 401 (citing *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In other words, substantial evidence "may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its] own conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotations omitted). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence in the record. *See Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)). And "[s]ince it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason," courts require "an explanation from the ALJ of the reason why probative evidence has been rejected" to determine whether the reasons for rejection were improper. *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) (citation modified).

**B. Applicable Law**

The Social Security Act defines "disability" as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)). The analysis proceeds as follows:

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(b). If so, the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe

impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's RFC and analyze whether the plaintiff can perform past relevant work. *See* 20 C.F.R. § 404.1520(e). Under C.F.R. § 404.1545, a claimant's RFC is "the most [he or she] can do" despite limitations "that affect what [he or she] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. *See* 20 C.F.R. § 404.1520(f). Otherwise, the ALJ proceeds to the final step.

At step five—the final step—the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## IV.    <u>DISCUSSION</u>

Plaintiff advances three principal arguments on appeal. First, Plaintiff argues that the ALJ failed to meaningfully analyze his morbid obesity at step 3 and in its RFC analysis. (Appeal Br.

at 6.)  Second, Plaintiff argues that at step 3, the ALJ did not compare Plaintiff's impairments with the Listings, as required by Supreme Court and Third Circuit Precedent.  (*Id.* at 15.)  Third, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.  (*Id.* at 29.)  The Court will address each argument in turn.

### A.    The ALJ's Evaluation of Plaintiff's Obesity

Plaintiff argues that the ALJ failed to consider his morbid obesity both at step three and in subsequent steps.  (Appeal Br. at 13–14.)  Specifically, Plaintiff asserts that the ALJ did not analyze the impact of his morbid obesity pursuant to Social Security Ruling ("SSR") 19-2p2, 84 Fed. Reg. 22924 (May 20, 2019).  (*Id.* at 13–14.)  At step three, according to Plaintiff, the ALJ should have considered his morbid obesity, individually and in combination with other impairments, to determine whether it was the medical equivalent of any Listings.  (*Id.* at 13.)  Moreover, in the RFC analysis, Plaintiff argues that the ALJ failed to discuss morbid obesity at all.  (*Id.* at 14.)  These failures, according to Plaintiff, require remand pursuant to *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009).  (*Id.* at 10, 15.)

SSR 19-2p provides guidance for how an ALJ should evaluate obesity claims under Titles II and XVI of the Social Security Act, and states in relevant part, that the functional limitations of obesity, either alone or in combination with another impairment, may medically equal a Listing and should be evaluated based on the information in the record.  SSR 19-2.  Moreover, the ALJ is instructed to "consider the limiting effects of obesity when assessing a person's RFC."  SSR 19-2. In *Diaz*, the Third Circuit remanded a case back to the ALJ because it failed to analyze the "cumulative impact of Diaz's obesity and other impairments on her functional capabilities."  577 F.3d at 504.  In reaching that holding, the Third Circuit held that "an ALJ must *meaningfully consider* the effect of a claimant's obesity, individually and in combination with her impairments,

on her workplace function at step three and at every subsequent step." *Id.* (emphasis added). Importantly, however, the Third Circuit noted that "[w]ere there *any* discussion of the combined effect of Diaz's impairments," it might not have remanded the case. *Id.* (emphasis in original). [3]

Here, the ALJ found that Plaintiff's "morbid obesity," among other ailments, was a severe impairment at step two of the sequential process. (AR at 12.) At step three, however, the ALJ did not explicitly mention obesity. "That omission merits close scrutiny," because "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Craig B. v. Comm'r of Soc. Sec.*, Civ. No. 20-13004, 2022 WL 557883, at *5 (D.N.J. Feb. 23, 2022) (citing *Diaz,* 577 F.3d at 504).

Although the ALJ did not use the exact language of "obesity" at step three, it did state that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR at 13.) This statement was inclusive of all of Plaintiff's impairments, and as such, the ALJ found that Plaintiff's obesity, either individually or in combination with any other impairment, does not meet a Listing. There is no reason to believe the ALJ did not do what it said it did. *See Bhuiyan v. Astrue*, Civ. No. 12-362, 2013 WL 663711, at *4 (D.N.J. Feb. 22, 2013). The ALJ further noted that "[n]o treating or examining physician has proffered findings that are equivalent

---

[3] Moreover, SSR 17-2p, which discusses how ALJs should make findings about medical equivalence in disability claims, states that if an ALJ "believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the [ALJ] is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." 2017 WL 3928306, at *4 (March 27, 2017). Rather, "a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding," and the ALJ's "articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." *Id.* As set forth in further detail below, the ALJ included Plaintiff's obesity as part of its RFC analysis at step 4 of its review.

in severity to the criteria of these or any other listed impairment." (AR at 13.) Moreover, the ALJ considered the opinions of "state medical consultants," who *did* explicitly discuss Plaintiff's obesity and concluded that Plaintiff did not satisfy any Listings. (AR 13, 113–16, 125–28.)

Although the ALJ's discussion of obesity at step three was limited, the ALJ more thoroughly discussed the medical evidence in the record concerning Plaintiff's morbid obesity at step 4 (i.e., the RFC analysis). (*Id.* at 15.) The Third Circuit and other courts in this district have held that an ALJ's failure to discuss obesity at step three is not a basis for remand when the ALJ properly considers obesity in the RFC analysis. *See Hoyman v. Colvin*, 606 F. App'x. 678, 680 (3d Cir. 2015); *Craig B.*, 2022 WL 557883, at *6; *Christina R. v. Comm'r of Soc. Sec.*, Civ. No. 23-3491, 2024 WL 3219309, at *6 (D.N.J. June 28, 2024). In its decision, the ALJ discussed Plaintiff's 2019 gastric sleeve surgery, which resulted in a weight decrease from 420 to 325 pounds (AR at 15, 50–51, 654); considered Plaintiff's BMI of 49.9 (AR 15, 856); and discussed the findings of state agency physicians who explicitly considered Plaintiff's obesity (*Id.* at 18–19, 127–28.) After considering this evidence, along with Plaintiff's other medical history, the ALJ concluded that Plaintiff had "the residual functional capacity to perform work activities with the reduced range of light work." (*Id.* at 19.) Accordingly, the ALJ's discussion of Plaintiff's obesity at step four confirms that the ALJ meaningfully considered Plaintiff's obesity.

In any event, Plaintiff has failed to show prejudice under the harmless error doctrine. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Under this doctrine, a "[p]laintiff must show how any error in the step-three analysis would affect the outcome of the case." *Dennis L. v. Comm'r of Soc. Sec. Admin.*, Civ. No. 22-6537, 2024 WL 3879084, at *5 (D.N.J. Aug. 20, 2024) (citation modified). "Accordingly, when [a plaintiff] fails to provide record citations or discussion of the listing and merely contends that the ALJ's findings are inadequate, the Third Circuit has regularly

affirmed the ALJ's findings." *Id.* (alteration in original) (collecting Third Circuit caselaw). Plaintiff's brief fails to provide proper citations to the record or make assertions that demonstrate that limitations caused by his obesity equate to a listed impairment. Consequently, Plaintiff fails to "present medical findings equal in severity to all the criteria for the one most similar listed impairment," and therefore remand is not appropriate. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *see also Morris v. Comm'r of Soc. Sec.*, Civ. No. 19-8473, 2020 WL 6580778, at *3 (D.N.J. Nov. 10, 2020) (denying the plaintiff relief because "[p]laintiff did not even attempt to demonstrate that the medical findings are equal in severity to all the criteria for any [l]isting" and "[t]he Commissioner bears no burden of disproof of equivalence.").

## B. The ALJ's Step Three Findings

Plaintiff next argues that at step 3 the ALJ failed to undertake a proper Listing analysis with respect to any of Plaintiff's severe impairments. (Appeal Br. at 18–19.) As discussed, at step three "the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000). The Listings are a regulatory device used to identify claimants whose impairments are so severe that they would be found disabled regardless of their vocational background. *See Sullivan*, 493 U.S. at 532. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Id.* at 530. To that end, "the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Ochs v. Comm'r of Soc. Sec.*, 187 F. App'x. 186, 189 (3d Cir. 2006).

Here, at step two, the ALJ found that Plaintiff's severe impairments included: "morbid obesity, osteoarthritis of the left knee, tendinitis of the left rotator cuff, coronary artery disease

(CAD), diabetic neuropath, carpal tunnel syndrome (CTS) and depressive disorder." (AR at 12.)

At step three, the ALJ then stated:

> The undersigned has considered listings 1.18, 4.04 and 12.04. No treating or examining physician has proffered findings that are equivalent in severity to the criteria of these or any other listed impairment. In reaching this conclusion, the undersigned has considered the opinions of the state agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion (20 CFR 416.927(f)).

(AR at 13.) Plaintiff argues that these statements are insufficient to support the ALJ's finding that

his physical impairments do not meet any of the Listings (i.e., Listing 1.18 and 4.04). (Appeal Br.

at 20.) To be clear, the ALJ could have provided a more detailed analysis on how Plaintiff's

impairments did not equal any of the Listings. Nevertheless, remand is not appropriate because

Plaintiff has not demonstrated that his impairments, or combination of impairments, is equivalent

to a listed impairment. *See Thomas v. Comm'r of Soc. Sec.*, Civ. No. 19-13990, 2021 WL 870745,

at *8 (D.N.J. Mar. 8, 2021). As explained, remand is only appropriate where a plaintiff can show

how the outcome of his case would have been different if the ALJ conducted a more thorough

analysis at step 3. To do that, Plaintiff was required to point to specific evidence in the record that

demonstrated he should succeed. But Plaintiff has failed to do so. He criticized the ALJ's analysis

as insufficiently thorough but does not discuss how his impairments would have changed the

outcome at step three.[4] (Appeal Br. at 21–23.) His failure to do so therefore provides the Court

with no basis to remand the case back to the ALJ. *See Holloman v. Comm'r Soc. Sec.*, 639 F.

---

[4] Plaintiff, counterintuitively, also claims that the medical reports in the record demonstrate that he had *fewer* impairments than what the ALJ found. (*Id.* at 20) (stating that the ALJ found Plaintiff to suffer from coronary artery disease despite DDS finding that Plaintiff did not suffer from that impairment). Such an argument suggests that the ALJ's decision was more favorable to Plaintiff and does not support a remand.

App'x. 810, 814 (3d Cir. 2016) (no remand where the plaintiff failed to explain how he would have prevailed at step 3).

Plaintiff also challenges the ALJ's evaluation of mental health listings (i.e., Listing 12.04). (Appeal Br. at 23). Specifically, Plaintiff claims that the ALJ's analysis of the "paragraph C" criteria was insufficient and prevents judicial review. (*Id.* at 24.) The Court agrees that the ALJ merely stated that it considered the "paragraph C" criteria. (AR at 14.) However, Plaintiff again fails to explain or discuss how the medical evidence in the record would establish that he met the "paragraph C" criteria. On the contrary, there is evidence in the record that explicitly refutes a finding in Plaintiff's favor. For example, Drs. Meza and Reed explicitly found that "[e]vidence does not establish the presence of 'C' criteria." (AR at 113, 125). Accordingly, there is again no basis for the Court to remand the case to the ALJ. *See Holloman*, 639 F. App'x. at 814.

With respect to the ALJ's "paragraph B" criteria, the Plaintiff challenges the ALJ's findings that Plaintiff did not have two marked or one extreme limitation in functioning. (Appeal Br. at 24–27.) But this argument is essentially a request by Plaintiff for the Court to re-weigh the evidence in his favor, something the Court may not do. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("[C]ourts are not permitted to re-weigh the evidence or impose their own factual determinations."). Here, the ALJ considered Plaintiff's interactions with others and the activities he engages in, along with other medical evaluations of his mental status, and ultimately concluded that Plaintiff did not meet the "paragraph B" criteria. (AR at 13–14.) These findings are supported by substantial evidence in the record (*see, e.g.,* AR at 113–14, 125–26), and there is no basis for the Court to set aside the ALJ's findings. *See Chandler*, 667 F.3d at 359.

C.    THE ALJ'S RFC DETERMINATION

Finally, Plaintiff challenges the ALJ's RFC determination as "without evidentiary support or articulated reasoning." (Appeal Br. at 37.)  Specifically, Plaintiff disputes the ALJ's findings that Plaintiff: (1) could sit for up to 6 hours per day; (2) requires the use of a cane to ambulate; (3) can frequently handle finger objects; and (4) is able to understand, remember, and carry out simple instructions.

RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Hartanft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999).  In making an RFC determination, "the ALJ must consider all evidence before him," *Burnett*, 220 F.3d at 121, and it may not reject pertinent or probative evidence without an explanation.  *See Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  However, an ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  Rather, there must simply be "sufficient development of the record and explanation of findings to permit meaningful review." *Id.*

Here, the ALJ has provided a sufficient analysis, and Plaintiff's arguments are without merit.  The ALJ explicitly found that the state agency physicians' reports to be persuasive (AR at 18–19), which stated that Plaintiff could sit for about six hours in an eight-hour workday.  (AR at 127.)  The ALJ also found that Plaintiff could not sit for more than one half hour at a time before needing to stand/shift positions for two minutes.  (*Id.* at 14.)  But that finding was also supported by Plaintiff's own testimony.  (*Id.* at 58–60.)  As such, the ALJ's finding was not "lay speculation" as Plaintiff claims.

Plaintiff next challenges the ALJ's determination that Plaintiff required the use of a cane when ambulating for more than a few feet or on uneven terrain.  (Appeal Br. at 38–39.)  Here, too,

the ALJ explained his rationale for his determination. When evaluating the state agency physicians, the ALJ found that Plaintiff had "additional limitations," including Plaintiff's need for a cane. (AR at 19.) This was based on Plaintiff's own testimony that he used a cane around the house and outside (*id.* at 59), which was reinforced by Plaintiff's doctor's report explaining Plaintiff's need for a cane (*id.* at 627). Thus, the ALJ's findings can reasonably be discerned, and remand is not warranted. *See Garland v. Ming Dai*, 593 U.S. 357, 369 (2021).

Plaintiff also challenges the ALJ's finding that Plaintiff can "frequently handle and finger objects," arguing that the ALJ did not analyze or discuss his rationale for reaching that conclusion. (Appeal Br. at 39–40.) However, the ALJ properly discussed the relevant evidence to support his findings. For example, the ALJ considered that Plaintiff underwent a left carpal tunnel release[5], and at an August 2022 post-surgical follow up, Plaintiff reported doing "great" with no numbness. (AR 15, 843.) Moreover, the ALJ also considered the stage agency physician findings, which found that Plaintiff did not have any manipulation restrictions. (*Id.* at 18–19, 114–16.) Again, Plaintiff's claim that the ALJ's findings are without evidentiary support has no merit.

Lastly, Plaintiff challenges the ALJ's RFC conclusion regarding Plaintiff's mental impairments. (Appeal Br. at 41.) Here, the ALJ concluded that Plaintiff was "able to understand, remember and carry out simple instructions with only occasional changes to essential job functions and is able to make simple-work related decisions." (AR at 14.) Plaintiff argues that this "simple tasks" limitation is deficient, because at step 3, the ALJ found that Plaintiff had a moderate limitation in: (1) "understanding, remembering or applying information;" (2) "concentrating, persisting, or maintaining pace;" and in (3) "adapting or managing oneself." (*Id.* at 13–14.)

---

[5] Carpal tunnel release is a surgical procedure aimed at relieving pressure on the median nerve in the wrist, which can cause pain, numbness, and weakness in the hand.

According to Plaintiff, the ALJ did not explain how Plaintiff could perform simple tasks in light of these three moderate mental limitations.  (Appeal Br. at 41.)

A "simple tasks" limitation may be appropriate after an ALJ has found that a claimant has moderate limitations in "concentration, persistence, or pace."  *See Hess v. Comm'r of Soc. Sec.*, 931, F.3d 198, 211 (3d Cir. 2019).  As the Third Circuit explained in *Hess*, a simple tasks limitation is acceptable after a finding of difficulties in "concentration, persistence, or pace" so long as the ALJ has a valid explanation for it.  *Id.* at 212.  There, the court of appeals found that the ALJ offered a valid explanation, noting that the ALJ explained that Hess's self-reported activities of daily living were consistent with an individual who was able to perform simple, routine task.  *Id.* at 214.  Moreover, the ALJ highlighted progress notes from treating and examining sources which indicates that Hess "could perform simple calculations, was fully oriented, and had intact remote/recent memory."  *Id.*

Like the ALJ in *Hess*, the ALJ here provided a valid explanation for why Plaintiff was limited to simple tasks.  Indeed, the ALJ considered all the evidence, and noted that Plaintiff's "[m]ental status exams were generally unremarkable with good insight, judgment, attention, and concentration and [Plaintiff] reported improved symptoms with medications."  (AR at 18.)  Moreover, the ALJ found that Plaintiff's "functioning is not significantly impaired," and that he can perform independent activities of daily living, such as personal care, preparing simple meals, doing laundry and dishes, and handling personal finances.  (*Id.*)  Thus, the ALJ provided a valid explanation and articulation of the evidence to support his "simple tasks" limitation in his RFC analysis.[6]

---

[6] Plaintiff relies on *Ingandela v. Comm'r of Soc. Sec.*, Civ. No. 20-8033, 2022 WL 154422 (D.N.J. Jan. 18, 2022) to support his argument that the ALJ's RFC analysis concerning Plaintiff's mental limitations was deficient.  There, in dicta, the district court found that ALJ suffered moderate mental impairments at step two of the analysis but only made "a passing reference to the medical evidence regarding the plaintiff's mental health."  *Id.* at *13 (citation modified).

## V.      **CONCLUSION**

For the reasons stated above, the Court will **AFFIRM** the ALJ's decision.  An appropriate

Order will follow.


Date: November 28, 2025

<div style="margin-left:50%">

s/ Zahid N. Quraishi

**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

</div>

---

Here, in contrast, the ALJ thoroughly discussed the medical evidence regarding Plaintiff's mental capacity, which was more than the "passing reference" discussed in *Ingandela*.